IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRE-PAID LEGAL SERVICES, INC.; M. SMITH ENTERPRISES, INC.; and MARK O. SMITH, <br><br> Plaintiffs, <br><br> v. <br><br> BENSON W. KANE, JR., <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> HARLAND STONECIPHER, <br><br> Third-Party Defendant. | Case No. CIV-07-388-FHS |

**OPINION AND ORDER**

Before the Court for its consideration is the Partial Motion to Dismiss (Docket No. 27) filed by Plaintiffs, Pre-Paid Legal Services, Inc. ("Pre-Paid"), M. Smith Enterprises, Inc. ("Smith Enterprises"), and Mark O. Smith ("Smith"), and Third-Party Defendant, Harland Stonecipher ("Stonecipher"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. With the exception of the breach of contract claim asserted by Defendant/Third-Party Plaintiff, Benson W. Kane, Jr. ("Kane"), Pre-Paid, Smith Enterprises, Smith, and Stonecipher seek the dismissal of all claims asserted against them by Kane in Kane's Amended Answer, Counterclaim, and Third-Party Complaint (Docket No. 21). The following eight counterclaims and third-party claims are the subject of this Partial Motion to Dismiss: (1) tortious interference with business relationship; (2) tortious interference

1

with prospective economic advantage[1]; (3) defamation; (4) breach of the implied covenant of good faith and fair dealing; (5) conversion; (6) negligence; (7) negligent infliction of severe emotional distress[2]; and (8) intentional infliction of severe emotional distress.  For the reasons stated below, the Court finds that the third, fourth, fifth, and seventh counterclaims and third-party claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court also finds that Kane's sixth claim should be dismissed as to Stonecipher.

I.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a party asserting a counterclaim or third-party claim must present in

---

[1] On page eleven of his Amended Answer, Counterclaim, and Third-Party Complaint, Kane includes language suggesting a separate claim for "tortious interference with economic opportunity."  The inclusion of this language, however, does not create a separate tortious interference claim.  Kane's tortious interference claims, set forth on pages eight through eleven of his "First Cause of Action," are limited to (1) tortious interference with business relationship and (2) tortious interference with prospective economic advantage.

[2] In response to the argument that Oklahoma law does not recognize a claim for negligent infliction of severe emotional distress, <u>Taylor v. Pepsi-Cola Co.</u>, 196 F.3d 1106, 1111 (10th Cir. 1999)("Oklahoma does not recognize a separate tort for negligent infliction of emotional distress"), Kane concedes the argument and informs the Court that he has not pled such a claim, but instead has asserted a claim for negligence, of which the negligent infliction of emotional distress is a part.  Semantical gyrations aside, the Court finds Kane's claim for negligent infliction of severe emotional distress should be dismissed as Oklahoma law does not recognize an independent tort on such basis. <u>Id</u>.  Consequently, the Court interprets Kane's "Fifth Cause of Action" as setting forth claims only for negligence and intentional infliction of severe emotional distress.

his pleading "a short and plain statement of the claim showing that [he] is entitled to relief." For purposes of reviewing the instant partial motion to dismiss, the Court is required to take all factual allegations of Kane's counterclaims and third-party claims as true and to draw all reasonable inferences in his favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Ridge at Red Hawk L.L.C. v. Scheider, 493 F.3d 1174, 1177 (10th Cir. 2007)(on review of a motion to dismiss counterclaims and third-party claims, the Court "assumes the truth of [defendant's] well-pleaded factual allegations and views them in the light most favorable to the [defendant]"). For years, the Court's analysis of a Rule 12(b)(6) motion has been guided by the standard that dismissal was appropriate only where "it appears beyond a doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Recently, however, in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court held that this "standard has earned its retirement," id. at 1969, and it set forth "a new inquiry . . . to be used in reviewing a dismissal: whether the [counterclaim/third-party claim] contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, 493 F.3d at 1177 (quoting Twombly, 127 S.Ct. at 1974). To satisfy this new standard, Kane must "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 127 S.Ct. at 1974. While detailed factual allegations are not necessary, the assertion of "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. Thus, in order to survive a Rule 12(b)(6) motion, the non-moving party is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.

II.

Plaintiffs, Pre-Paid, Smith Enterprises, and Smith, initiated this action by filing their Petition in the District Court of Pontotoc County, Oklahoma, on October 12, 2007.[3] In their Petition, Plaintiffs seek monetary and injunctive relief against Kane for breach of contract, misappropriation of trade secrets, intentional interference with contractual relations (as to Pre-Paid) and breach of contract and intentional interference with prospective economic advantage (as to Smith Enterprises and Smith). Plaintiffs allege that Kane, an independent contractor with Pre-Paid working under a September 26, 1998 "Associate Agreement," was authorized to sell and market Pre-Paid memberships which provide legal services to individuals and groups through legal expense contracts. Kane was also authorized to recruit and train others to market such memberships. Pre-Paid contends its products and marketing systems have resulted in the creation of many trade secrets, including the names and identities of its sales associates (such as Kane) and their upline and downline sales associates. On May 11, 2006, Kane entered into a written contract with Smith Enterprises ("Smith-Kane Agreement") to sell his position and rights with Pre-Paid. As part of this agreement, Kane agreed not to disclose any confidential information he acquired during his relationship with Pre-Paid, including any records, lists and knowledge of Pre-Paid's associates and other trade secrets. Also on May 11, 2006, Kane entered into a written contract with Smith ("Buy-Sell Agreement) under which Kane pledged his Pre-Paid commissions to Smith. As part of this contract, Kane also agreed

---

[3] Kane removed the Pontotoc County, Oklahoma, action to the United States District Court for the Eastern District of Oklahoma on November 13, 2007, on the basis of diversity jurisdiction.

4

not to disclose any Pre-Paid trade secrets information. As the basis for their claims set forth in the Petition, Plaintiffs contend Kane has "recruited or attempted to recruit Pre-Paid associates to another multi-level marketing company and has used his knowledge of Trade Secrets to the detriment of Pre-Paid, Smith Enterprises, and Smith, in violation of the [parties' contracts]." Petition, ¶ 14. In October 2006, Plaintiffs terminated the remaining payments to Kane the under May 11, 2006, contract between Kane and Smith Enterprises because of Kane's actions. Plaintiffs' initiation of this suit followed on October 12, 2007.

Kane has responded to Plaintiffs' suit by asserting counterclaims against Plaintiffs and by filing a third-party complaint against Stonecipher, the Chief Executive Officer of Pre-Paid. These claims, as enumerated above, have as their genesis allegedly tortious conduct by Pre-Paid, Smith Enterprises, Smith, and Stonecipher with respect to false accusations of wrongdoing by Kane. It is Kane's position that this conduct was undertaken in an effort to "damage his reputation and standing and undermine his efforts to succeed in his new business enterprise." Docket No. 21, ¶ 61. In particular, Kane alleges that Pre-Paid, Smith Enterprises, Smith, and Stonecipher "contacted colleagues, associates, and members and informed them that [Kane] was guilty of improper and illegal acts regarding Pre-Paid, [and] that he violated one or more agreements with Pre-Paid and/or Smith Enterprises and/or Smith." Id. at ¶ 74.

III.

Although somewhat unclear from his pleading, it appears Kane is attempting to assert two theories of tortious interference under his "First Cause of Action" wherein he lists "tortious interference

5

with advantageous business relationships and/or prospective business and economic relations." This phrasing equates with two theories recognized under Oklahoma law[4]: tortious interference with a contractual relationship and tortious interference with a prospective economic advantage. Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 150 n. 96 (Okla. 1998). Although somewhat similar, the two torts are not synonymous. Id. "Interference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit, whereas interference with a contractual relationship results in loss of a property right." Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847-48 (Okla.Civ.App. 1984). The essential elements of a claim for tortious interference with a contractual relationship are: "(1) a business or contractual right that was interfered with, (2) interference that was malicious and wrongful and was neither justified, privileged nor excusable, and (3) damage caused by interference." Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1093 (10th Cir. 2006). A properly pled claim for tortious interference with a business or contractual relationship includes the allegation that one of the parties to the contract was induced by a third party to breach the agreement. Gabler v. Holder and Smith, Inc., 11 P.3d 1269, 1278 (Okla.Civ.App. 2000). "The essential elements of a claim for tortious interference with prospective economic advantage are 'the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.'" Boyle Servs., Inc. v. Dewberry

---

[4] In this diversity action, Oklahoma law applies. Blanke v. Alexander, 152 F.3d 1224, 1228 (10th Cir. 1998).

6

Design Group, Inc., 24 P.3d 878, 880 (Okla.Civ.App. 2001)(citations omitted). Likewise, the interference required for this claim "includes inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation." Id.

The Court has carefully reviewed the allegations set forth in Kane's counterclaims and third-party complaint and finds that although labels and legal conclusions permeate the document, sufficient factual allegations have been plead which satisfy the "plausibility" standard under Twombly with respect to the tortious interference claims. In particular, it can be understood from a fair reading of the counterclaims and third-party complaint that Pre-Paid, Smith Enterprises, Smith, and Stonecipher made contact with associates to inform them of improper and illegal acts by Kane in an effort to interfere with either an existing contractual relationship between Kane and those associates or the expectancy of such a relationship, although not yet existing between Kane and those associates. The nature of this improper or illegal conduct can be gleaned from the allegation that Pre-Paid, Smith Enterprises, Smith, and Stonecipher believed Kane was prohibited from contracting with associates he had developed a relationship with during his tenure with Pre-Paid. Docket No. 21, ¶ 74 ("Plaintiffs and Third-Party Defendant incorrectly believed that the Defendant was contractually prohibited from engaging with his colleagues, associates, friends, and members in any business other than Pre-Paid even though he was no longer associated with Pre-Paid."). While it is true that the details of the improper or illegal acts have not been pled, no such requirement exists. Twombly, 127 S.Ct. at 1974 ("we do not require heightened fact pleading of specifics"). Rather, under Twombly, Kane must plead sufficient factual information so that the Court has "reason to

7

believe that [Kane] has a reasonable likelihood of mustering factual support for [his] claims." Ridge at Red Hawk, 493 F.3d at 1177. Here, Kane has done so with his allegations of contact between Pre-Paid, Smith Enterprises, Smith, Stonecipher and the associates and his allegations that such contact interfered with his existing and prospective business relationships with those associates.[5] Consequently, the motion to dismiss Kane's tortious interference claims is denied.

IV.

Kane's "Second Cause of Action" is for defamation. Kane alleges Pre-Paid, Smith Enterprises, Smith, and Stonecipher have made "false, defamatory, and misleading statements about him." Docket No. 21, ¶ 80. Other than this and similar conclusory statements, however, Kane has failed to provide any factual allegations to support a defamation claim. Consistent with the "plausibility" standard enunciated by the Supreme Court in Twombly, the Tenth Circuit has held that "[i]n the context of a defamation claim, Fed.R.Civ.P. 8(a) requires that the [counterclaim or third-party claim] provide sufficient notice of the communications complained of to allow [the party] to defend itself." McGeorge v. Continental Airlines, Inc., 871 F.2d 952, 955 (10th Cir. 1989). Because Kane has wholly failed to identify any communication which would allow the parties to defend against a claim of defamation,

---

[5] Of course, this finding should not be interpreted as a finding that the contacts made with the associates were improper or illegal. That determination, and others necessary for the *establishment* of a tortious interference claim, can only be made after the development of a factual record.

dismissal is appropriate.[6]  Consequently, Kane's counterclaims and third-party claim for defamation are dismissed.

V.

Kane's "Third Cause of Action" includes a claim for breach of the implied covenant of good faith and fair dealing ("bad faith") against Pre-Paid, Smith Enterprises, and Smith, in addition to his breach of contract claims.[7]  Pre-Paid, Smith Enterprises, and Smith seek dismissal of the bad faith claim arguing that Oklahoma law limits such claims to insurance-related contracts, absent circumstances which would give rise to some "special relationship" between the parties.  In response, Kane asserts that the Oklahoma Supreme Court and the Tenth Circuit have both recognized that an implied covenant of good faith and fair dealing is present in every contract.  See Beshara v. Southern Nat. Bank, 928 P.2d 280, 288 (Okla. 1996); Worldlogics Corp. v. Chatham Reinsurance Corp., 108 P.3d 5, 7 (Okla.Civ.App. 2005); Conover v. Aetna, 320 F.3d 1076 (10th Cir. 2003).  While this statement is accurate, it is incomplete.  Absent circumstances giving rise to a special relationship, the Oklahoma Supreme Court has held that "[i]n ordinary commercial contracts, a breach of [the duty of good faith and fair dealing] merely results in damage for breach of contract,

---

[6] In his response to the partial motion to dismiss, Kane relies on portions of his amended pleading (Docket No. 21) which are "quoted in the Motion for Partial Summary Judgment on pages 10 and 11."  Docket No. 30, p. 3.  The Court cannot reference any such quotations, however, as a review of the docket sheet in this case reveals that no "Motion for Partial Summary Judgment" has been filed by any party.

[7] No breach of contract or breach of the implied covenant of good faith and fair dealing claim is asserted against Stonecipher.

9

not independent tort liability." <u>Wathor v. Mut. Assurance Adm'rs, Inc.</u>, 87 P.3d 559, 561 (Okla. 2004). A review of Kane's amended pleading fails to reveal any facts which would support the existence of a special relationship necessary to give rise to a claim for breach of the implied covenant of good faith and fair dealing in this admittedly commercial context. Consequently, Kane's counterclaims for breach of the implied covenant of good faith and fair dealing are dismissed.

VI.

In his "Fourth Cause of Action," Kane attempts to assert a conversion claim against Pre-Paid, Smith Enterprises, and Smith based on his contention that they "wrongfully exerted dominion and control over [Kane's] personal property and/or through the wrongful exercise or assumption of authority depriv[ed] [Kane] of possession of personal property." Docket No. 21, ¶ 96. The personal property allegedly converted is "substantial sums of money in excess of Seventy-Five Thousand Dollars ($75,000)," which sums were "owed to [Kane] . . . in commissions." <u>Id</u>. at ¶ 59. Pre-Paid, Smith Enterprises, and Smith moved to dismiss Kane's conversion counterclaim on the basis that Kane has failed to plead the essential elements of a conversion claim because only a right to recover money has been asserted, i.e., a breach of contract action, and not the wrongful dominion over goods or tangible personal property. Under Oklahoma law, "[c]onversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." <u>Welty v. Martinaire of Oklahoma, Inc.</u>, 867 P.2d 1273, 1275 (Okla. 1994). Generally, only tangible personal property may be converted; consequently, a tort action for conversion may not be maintained to satisfy a debt owing by virtue of contract. See <u>Shebester v. Triple Crown Insurers</u>, 826

P.2d 603, 608 (Okla. 1992) and Steenbergen v. First Fed. Sav. & Loan, 753 P.2d 1330, 1332 (Okla. 1987). Here, Kane has merely plead an action to recover a debt, not the conversion of any personal property. As a result, Kane's claim for conversion against Pre-Paid, Smith Enterprises, and Smith is subject to dismissal.

VII.

Finally, in his "Fifth Cause of Action," Kane asserts claims for negligence and intentional infliction of severe emotional distress. With respect to the negligence claim, Kane contends Pre-Paid, Smith Enterprises, Smith, and Stonecipher owed him "a common law duty . . . to exercise reasonable care under the circumstances to avoid injury to [him]." Docket No. 21, ¶ 103. It is argued that this claim is subject to dismissal under Twombly because Kane fails to provide any of the facts or circumstances giving rise to such duty. Except as to Stonecipher, the Court disagrees and finds sufficient factual allegations have been presented regarding the parties' contracts to support the existence of a duty, a breach of that duty, and damages flowing from such breach for purposes of a motion to dismiss. Under Oklahoma law, "[a] common law duty to perform with care, skill, reasonable expediency, and faithfulness accompanies every contract." Lewis v. Farmers Ins. Co., 681 P.2d 67, 69 (Okla. 1983) and Leak-Gilbert v. Fahle, 55 P.3d 1054, 1057 (Okla. 2002). A "[n]egligent failure to observe any of these conditions will give rise to an action" in both contract and tort. Lewis, 681 P.2d at 69. Consequently, Kane's negligence claims against Pre-Paid, Smith Enterprises, and Smith are not subject to dismissal for failure to state a claim upon which relief can be granted. Kane's third-party negligence claim against Stonecipher, however, is subject to dismissal as no contractual relationship is

11

alleged between Kane and Stonecipher and, moreover, no facts are alleged which would give rise to any duty owed by Stonecipher to Kane.

Likewise, the Court has reviewed the allegations of the counterclaims and third-party claims against the backdrop of an intentional infliction of severe emotional distress claim and finds the allegations are sufficient to survive a challenge under the plausibility standard of Twombly. Whether the asserted conduct gives rise to a finding of conduct which is so extreme and outrageous as to go beyond all bounds of decency, is not a proper determination on a motion to dismiss, but rather must await the development of a factual record.

VII.

Based on the foregoing reasons, the partial motion to dismiss (Docket No. 27) filed by Pre-Paid, Smith Enterprises, Smith, and Stonecipher is granted as to Kane's counterclaims and third-party claims for defamation, breach of the implied covenant of good faith and fair dealing, conversion, and negligent infliction of severe emotional distress. The partial motion to dismiss is also granted as to Kane's third-party claim against Stonecipher for negligence. In all other respects the partial motion to dismiss is denied.

It is so ordered this 5th day of March, 2008.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma